**STATE ex KIPKER v LIMA (city) et**

Ohio Appeals, 3rd Dist, Allen Co

No 666.   Decided Jan 9, 1936

Hughes & Hughes; Lima, M. C. Light, Lima, and Fred C. Becker, Lima, for plaintiff.

C. W. Long, Lima, for defendants.

## OPINION

**By GUERNSEY, J.**

Under the pleadings and evidence in this case the question as to whether the relator was legally within the classified service of the City of Lima, Ohio, on the 30th day of November, 1934, is dependent first on the validity of ordinance number 1214 adopted by the City Commission on January 30, 1922, placing the office of chief of police in the unclassified service; and, second, if this ordinance is valid, on the validity of the resolution adopted by the Civil Service Commission on July 23, 1931; and, third, if the resolution is valid and the relator thereby reinstated on the eligible list of patrolman in the police department, on his resignation as chief of police on December 15, 1931, on the validity of his appointment to the position of patrolman by the City Manager on December 2, 1932, and his transfer with the consent of the Civil Service Board, from the police department to the fire department and appointment to the position of fireman, a position similar to and having the same pay and similar duties, subsequent to the adoption and taking effect of the amended charter in November, 1932.

If the relator was legally within the classified service of the City of Lima on the 30th day of November, 1934, his removal by the mayor and subsequent dismissal of his appeal by the Civil Service Board, both being based on the premise that relator at the time mentioned illegally held the position of fireman in the classified service, are null and void, and the relator is entitled to continue in the service and to the relief prayed for.

We will first consider whether ordinance number 1214 was a valid enactment.

Since the regulation of the civil service of the city is clearly one of the powers of local self-government, provisions in relation thereto contained in the charter adopted by a city under the provisions of **Article XVIII of the Ohio Constitution** supercede the general civil service law in the municipality concerned provided they comply with the requirements of §**10 of Article XV of the Constitution** by providing for appointments and promotions in the city civil service according to merit and fitness ascertained, so far as practicable, by competitive examinations, and are otherwise constitutional. **State ex Lentz v Edwards, 90 Oh St 305; Hile v Cleveland, 118 Oh St 99.**

As under the authorities mentioned the provisions of the charter relating to the city civil service superceded the statutes of the state relating to city civil service, our consideration of the validity of this ordinance is necessarily limited to the question as to whether it is in conformity with the provisions of the charter relating to civil service.

Section 33 of the original charter, in effect when the ordinance was adopted, expressly provides that the unclassified service shall include the City Manager; all heads of departments and deputies, including the Commissioner of Street Railways; and such heads of departments as the City Commission shall from time to time by a four-fifths vote determine. There is another provision of the original charter that the City Manager, except as to certain specified city departments and except as may otherwise be provided, shall be the acting head of each and every department of the city.

Reading these provisions together, it is clear that the City Manager was intended to be included in the unclassified service, and that the reference to heads of departments, in §33 was not intended to refer to the City Manager.

Under the original charter certain departments of the city are specifically referred to and their duties defined but the departments specifically referred to in this manner do not include the police department. However, there is reference in §34 of the original charter referring to employes of the police and fire departments and recognizing such departments as departments of the city government. It would therefore appear that the authority of the City Commission to include in the unclassified service "such heads of departments as the City Commission shall from time to time by a four-fifths vote determine" was intended to apply and did apply to the head, that is, the chief of the police department, and vested power in the City Commission to enact ordinance number 1214, above referred to. And this ordinance having been enacted by the required vote of the City Commission, is a valid ordinance of the city, and at the time the relator was appointed to such office and performed the duties thereof he was in the unclassified service of said city. As this ordinance is valid it is necessary to determine whether the resolution adopted by the Civil Service

Board on July 23, 1931, hereinbefore set forth, is valid.

Under the original charter, adopted pursuant to the provisions of **Article XVIII of the Constitution of Ohio,** there was no division of the powers into legislative and executive powers, and the powers granted to the Civil Service Board under such charter were both legislative and administrative.

The grants of power to the Civil Service Board pertinent to the case at bar, are contained in §34 of the original charter, which provides:

"The board shall prescribe, amend and enforce rules for the classified service. * * *"

"The rules shall provide:

"(k) For transfer from a position to a similar position in the same class and grade and for reinstatement on the eligible list within one year of persons who, without fault or delinquency on their part, are separated from the service or reduced in rank."

"(p) The board shall adopt such other rules not inconsistent with the foregoing provisions of this section as may be necessary and appropriate for the enforcement of the merit system."

The first provision referred to is a general grant of power which, standing alone, would include all the powers enumerated in said section. Sub-section (k) is a grant of a specific power and sub-section (p) is a general grant of power subject only to the limitation contained in such sub-section, that the other rules adopted by the Board shall not be inconsistent with the foregoing provisions of said section and shall be such as may be necessary and appropriate for the enforcement of the merit system.

As the limitations on the power of the Board with reference to the adoption of other rules are fixed by the provisions of said section, the general rule of statutory construction that the expression of one thing is the exclusion of others, does not apply to the construction of the provisions of said section. This canon of statutory construction, like other canons of statutory construction, is only an aid in the ascertainment of the meaning of the law and must yield whenever a contrary intention on the part of the law maker is apparent. Where a statute contains a grant of power enumerating certain things which, standing alone, would include these things and more, the general grant may be given full effect if the context shows that the enumeration was not intended to be exclusive. Springer

et v Government of the Philippine Islands, 277 U. S. 189, Volume 48 Supreme Court Reporter, page 480 at page 484.

We shall therefore consider whether the resolution above mentioned is inconsistent with the provisions of §34 preceding sub-section (p) thereof, and as none of the preceding sub-sections thereof, other than sub-section (k) relate to the subject of reinstatement on the eligible list, our consideration will be limited to the question as to whether the provisions of the resolution are inconsistent with the provisions of sub-section (k).

The purpose of sub-section (k) is to assure to employes in the classified service, who are separated from the service without fault or delinquency on their part, the right to reinstatement on the eligible list within one year, and such sub-section does not in terms negative the right of the board to adopt a rule permitting reinstatement where the period of separation is greater than one year, or upon conditions based on the nature and continuity of service in both the classified and unclassified service without regard to the length of time of separation from the classified service.

Under the resolution mentioned, reinstatement on the eligible list is based on the nature and continuity of service in the classified and unclassified service of the city without regard to the length of time of separation from the service. It does not abrogate the right of any employe in the classified service to reinstatement on the eligible list within one year from his separation from the classified service upon the conditions provided in sub-section (k), and applies only to a special class or group of cases, the conditions of reinstatement being such that only a limited number of employes come within its provisions.

Things are said to be inconsistent when they are contrary the one to the other, so that one infers the negation, destruction or falsity of the other. O'Malley v Lazerne County, Pa., 3 Kulp, 41, 46.

"Inconsistency implies opposition; antagonism, repugnance." Swan v U. S., 9 Pacific, 931.

Applying these definitions of inconsistency, the provisions of the resolution mentioned are not inconsistent with the provisions of sub-section (k) as they do not negative nor nullify and are not repugnant to the right of an employe to reinstatement on the eligible list within one year from his separation from the service, and ap-

plying to a special class or group of cases, are only cumulative to the provisions of sub-section (k) applying to all employees.

We shall next consider whether the provisions of said resolution are necessary and appropriate for the enforcement of the merit system as provided in sub-section (p) of §34.

The merit system referred to is the merit system under the civil service provided for in §10, **Article XV of the Constitution of Ohio,** reading as follows:

"Appointments and promotions in the civil service of the state, the several counties and cities, shall be made according to merit and fitness, to be ascertained as far as practicable by competitive examinations. Laws shall be passed for the enforcement of this provision."

The Supreme Court in the case of **Curtis v State, 108 Oh St 292,** held that the fundamental purpose of the civil service laws and rules is to establish a merit system whereby selection for appointments in certain branches of the public service may be made on the basis of a demonstrated relative fitness, without regard to political considerations.

The rule provided in the resolution applies only to employes whose employment and the nature of whose services conform to each and all of the following conditions:

1. The employe shall have been in the classified service.

2. The employe shall have become without lapse of time, the head of a department of the city.

3. The termination of his services as head of a department shall be voluntarily or through no fault or delinquency on his part.

Under the rule the right of the employe to reinstatement is based on his demonstrated relative fitness through his previous employment in the classified service obtained through competitive examination; on his continuity and efficiency of service assured through his promotion without lapse of time to the head of a department and his services as such head; and his fidelity of service is assured by the termination of his services as a head of a department, voluntarily or through fault or delinquency on his part.

Each and all of the provisions mentioned are necessary and appropriate to the enforcement of the merit system as the purpose of the same has been defined by the Supreme Court, and the rule is therefore a valid exercise of the power confererd on the Civil Service Board under the provisions of sub-division P of §34 of the charter.

This rule, which was adopted July 23, 1931, prior to the resignation of the relator as chief of police upon the 15th of December, 1931, had the effect of placing the relator on the eligible list for the position of patrolman in the police department which was the position last held by him in the classified service prior to his becoming, without lapse of time, the chief of the police department of the city; and under the civil service rules heretofore referred to he was entitled to remain on said list for the period of one year.

This leaves the question as to the effect of the adoption of the amended charter in November, 1932, before the appointment of relator to the position of patrolman in the police department by the City Manager, without examination, on December 2, 1932, subsequent to the adoption of such amended charter.

As hereinbefore mentioned, the amended charter expressly provided that all ordinances and resolutions in force at the time of the taking effect of the amended charter not inconsistent with its provisions, should continue in full force and effect until amended or repealed. As the relator was automatically placed on the eligible list by virtue of the resolution of the Civil Service Board under date of July 23, 1931, upon his resignation as chief of police on December 15, 1931, his eligibility to appointment under the civil service rules of the city became vested for the period of one year thereafter and as there was no provision of the amended charter purporting to do away with such vested rights, such rights were unaffected by the adoption of the charter. Furthermore, the provision of the charter last above referred to had the effect of continuing in full force the resolution adopted by the Civil Service Board above referred to, unless the same is inconsistent with the provisions of the amended charter.

As hereinbefore stated, the provisions of the amended charter with reference to civil service are almost identical with the provisions of the original charter with reference to the same subject matter, and subdivision P of §90 of the amended charter is identical with the provisions of sub-division P of §34 of the original charter under which said resolution was adopted.

While the amended charter purports to vest all legislative powers in the council,

it does in terms vest in the Civil Service Board power to adopt such other rules not inconsistent with the foregoing provisions of §90 of the amended charter as may be necessary and appropriate for the enforcement of the merit system. The power conferred is not a power delegated by the legislative authority of the city but is a power conferred by the charter under the provisions of the constitution of the state derived from the people, and is on an equality with the power conferred by the charter on the council. And whether considered legislative or administrative, or both, it is identical with the power conferred on the Civil Service Board by the original charter. The resolution therefore is not inconsistent with the provisions of the amended charter.

As hereinbefore set forth, the amended charter further provides that all persons holding office at the time the charter goes into effect, should continue in office and in the performance of their duties until provision shall have been otherwise made in accordance with the provisions of the amended charter for the performance of the duties of or the discontinuance of such office. Under this saving clause provision the City Manager was authorized and empowered to continue the performance of his duties after the adoption and taking effect of the new charter and until the election of officers under the amended charter in November, 1933. The duties of the City Manager, as hereinbefore set forth, included the duty to appoint all subordinate officers and employes of the city, and the appointment by the City Manager of the relator as patrolman on December 2, 1932, and the appointment by the City Manager of relator to the position of fireman in the fire department on December 14, 1932, were in the discharge of his duties in conformity with the provisions of the amended charter, last mentioned.

The relator having been duly appointed patrolman following competitive examination in accordance with the civil service rules, and having without lapse of time become the head of the Police Department of the city of Lima, and having voluntarily terminated his service as head of such department, was lawfully reinstated on the eligible list for the position of patrolman in the police department immediately upon his resignation as chief of police on December 15, 1931, and was thereafter, on December 2, 1932, lawfully appointed to the position of patrolman by the City Manager, and was thereafter, on the 14th day of December, 1932, lawfully appointed by the City Manager to the position of fire-

man in the fire department of said city and lawfully held said position in the classified service of the fire department of said city on the 30th day of November, 1934 and is entitled to the relief prayed for in his petition, and judgment will be entered accordingly.

KLINGER, PJ, concurs.

CROW, J, concurring:

In my opinion relator is clearly entitled to be reinstated in the service from which he was summarily dismissed, and I will state my reasons concisely as possible.

Sec 486-16, GC, provides in part as follows:

"Any person holding an office or position under the classified service who has been separated from the service without delinquency or misconduct on his part may, with the consent of the commission, be reinstated within one year from the date of such separation to a vacancy in the same or similar office or position in the same department;"

No other portions of said section are pertinent to this case.

At all the times each step was taken in the matter of the several appointments of relator, his transfer and his dismissal, the charter or amended charter of the City of Lima, by either §34, or §90, sub-division (k), required the Civil Service Board to provide by rule "for transfer from a position to a similar position in the same class and grade for reinstatement on the eligible list within one year of persons who, without fault or delinquency on their part, was separated from the service or reduced in rank."

The point in quoting this charter requirement and the portion of the statute we have quoted, is that the charter provision does not say when the one year shall begin to run prior to reinstatement, though the time within which reinstatement on the eligible list is fixed absolutely at one year, which fixation is charter law to be effectuated by rule or rules of the Civil Service Commission.

Another feature of difference in the charter from the statute, is that the charter does not require consent of the Civil Service Commission to reinstatement on the eligible list but consideration of this is unnecessary to the decision of the instant case.

If the charter were silent on the feature of the one year limitation, the statute would stand, unless the charter otherwise pro-

vided or authorized provision to be made, which, I hold was not done. It must therefore be presumed that the charter makers intended a different time from the one fixed by the statute, for the commencing of the one year period to run, though they did not expressly specify the difference.

In view of that absence of specification, what should be the construction?

In the case at bar, the "separation from the service" was caused by the incumbency of relator as chief of police, and I am unable to see why, during the continuation of that service, whether it would be less or more than a year, the end of such incumbency should not be the period from which the limitation of one year should commence to run. What other possible reason could there have been for that change in the charter, from the statutory provision?

It must be assumed that however long the unclassified service might continue, it would be to the satisfaction of his superior officer, and consequently to the advantage of the city. The tenure would, of course, be indefinite because of its being in the unclassified service, and if the incumbent desired to re-enter classified service of the city, with its certain tenure, if the limitation of one year applied from the time he left the classified service, a strong incentive would exist for his leaving the uncertain tenure and seeking a certain tenure. Otherwise stated, constant uncertainty of tenure would obtain as to any incumbent in the unclassified service as was the relator, and the consequent detriment to the public service can be easily envisaged. Continuous employment is of the essence of the merit and fitness system made mandatory by the **Constitution of Ohio, §15, Article 10.**

I regard the minority opinion not sound in the holding that rule number 48 constitutes substantive law of the city; it is manifestly in irreconcilable conflict with charter provision (k) already quoted, in relation to the time when the limitation of one year for restoration to the classified list begins to run. **127 Oh St 261.** Otherwise, the rule would be an insuperable barrier to relator's right to relief, since he was not reinstated to the eligible list until more than five years after he quit the unclassified service.

Whatever else may be said of the rule made July 23, 1931, it at least does when applied to the relator herein, carry into effect the construction I think sub-section (k) should have concerning the event from which the one year runs within which his reinstatement on the eligible list was to

have been made, namely "upon the termination of such service as head of a department."

My construction of sub-section (k) harmonizes with the construction so placed on it by the Civil Service Commission in respect to the commencement of the time for the running of the limitation of one year, as does also the conduct of the officer who appointed relator to the position from which he was dismissed. Such acts constitute practical construction which courts will always duly regard.